M. H. GREENFIELD, Appellee, v. CHICAGO & NORTHWESTERN RAILWAY COMPANY, Appellant.

1. **Railroads:** NEGLIGENCE: FIRE: EVIDENCE. In an action to recover damages sustained by the destruction of certain hay, fence posts and growing trees, by fire, alleged to have been set by sparks from the defendant's engines, it appeared that the fire started in a field about one hundred and sixteen feet from the defendant's right of way, and several witnesses testified that the fire was first seen within a few minutes after the passing of one of the defendant's trains, and that no fires and no person setting fires, had been seen in that vicinity that day. *Held,* that, notwithstanding the absence of all evidence as to the extent and course of the wind at the time of the fire, the evidence was sufficient to sustain the finding that the fire was set by the defendant's engine.

2. ——: ——: ——: ——: PRESUMPTIONS: INSTRUCTIONS TO JURY. Proof of damage by fire, set by sparks from a railway company's engine, raises a presumption of negligence on the part of the company, which cannot be said, as a matter of law, to be overcome by proof that the engine in question was supplied with the best appliances to prevent the escape of fire, and was in good repair at the time, and that the same was not negligently handled. Under such circumstances, *held,* that the question of the company's negligence was properly left to the jury.

3. ——: ——: ——: DAMAGES. The fire having destroyed two acres of native maple and box-elder growing trees, which it was the plaintiff's intention to use from time to time for wood and other timber, *held,* that the plaintiff was entitled to recover the difference in the value of the timber just before and its value just after the fire.

*Appeal from Harrison District Court.*—HON. C. H. LEWIS, Judge.

WEDNESDAY, JUNE 3, 1891.

ON the first and second days of April, 1889, the plaintiff lost by fire some hay, fence posts and growing trees. This action is to recover from the defendant company, on the ground that the fires were set by passing engines. There was a judgment for the plaintiff, from which the defendant appeals.—*Affirmed.*

*Hubbard & Dawley,* for appellant.

*S. H. Cochran,* for appellee.

GRANGER, J.—I. It is insisted by the appellant that the evidence is not sufficient to sustain a finding that the fires were set by the defendant's

1. RAILROADS: negligence: fire: evidence.

engines. We give the appellant's statement of the evidence bearing on this point: There were two fires. The first fire occurred April 1, 1889, about five o'clock in the afternoon. Samuel Boone testified: "A train had just passed before I saw the fire, and I noticed it in a few minutes. * * * I had not seen any fire in that vicinity that day, before the train passed. * * * No fire was set out on that place that day by myself or anyone in my employ." M. A. Boone testified: "I was planting potatoes on the west side of the track. A passenger train passed along the track just before the fire sprang up. A few minutes after the train passed I saw the fire spring up on the other [east] side of the track. I did not see anybody pass along the public road at the time the train passed by. Did not see any fire in that same place, or near where that fire sprang up, that same day." Paul Bostwick testified: "I saw the smoke of the first fire. Think I was not more than a mile and a half away about the time I saw the smoke. I had seen a passenger train going west. Cannot state how far the fire had progressed when I first saw the smoke. I was not where I could see the fire." This first fire started on Samuel Boone's land, and spread thence to the plaintiff's premises. Between Boone's land and the defendant's right of way there is a public highway of the ordinary width, namely, sixty-six feet. The right of way is one hundred feet wide, with the track in the center. The second fire happened on the next day, April 2. As to this one, Samuel Boone says: "We

noticed it just after the passenger train went by; just
at the time, about. We noticed it right away. Hap-
pened to be sitting, looking at it. The fire sprang up
about as far from the right of way as the first one. It
began on Matthew Hall's land." S. C. Cherry says:
"It was only a minute or two after this engine or train
passed before I saw this fire, the size of a man's hat,
spring up. Did not see anybody around there setting
a fire anywhere that day." Paul Bostwick says: "It
could not have been more than four or five minutes
after I saw this train pass before the fire sprang up."

The fire started in a field about one hundred and
sixteen feet from the railway track. No other fires, or
persons setting fires, were seen near there on those
days. We think no jury or disinterested person could
or should hesitate to find that the fires were set by the
defendant's engines. As against such a showing, a
jury should not allow suppositions or conjectures that
the fires might have occurred in some other way, to
defeat a finding of the fact as it appears from the evi-
dence. It is said there was no evidence "showing how
hard the wind blew, in what direction it was blowing,
or that there was any wind at all;" that there was no
evidence "to show that an engine can possibly set a
fire at this extraordinary distance from the track;" or
"that the fires might not have been set by some one
else." The evidence, however, did show a cause
or means for the fire to originate; and the occurrence
of the fires in point of time with the passing engines,
in the absence of all evidence as to the extent and
course of the wind, would justify a belief that the con-
ditions in these respects were favorable. It is a matter,
too, of common knowledge that sparks and cinders
from engines will go a distance of one hundred and
sixteen feet or more; and, in the absence of any other
cause, a belief that fire originated therefrom may be
well founded.

II.   The defendant asked an instruction as follows:
"3.   The defendant has shown, by evidence, which
is uncontradicted, that the engines which
it is alleged set out the fires in controversy
were supplied with the best appliances to
prevent the escape of fire, and were in good repair at the
time, and that the engines were not negligently handled.
It has, therefore, relieved itself from liability, and you
should find for the defendant."   The court refused the
instruction, and gave the following: "9. Whether
the testimony of the defendant's employes is sufficient
to overcome the presumption of negligence, and the
facts and circumstances, is solely for your determina-
tion; and, in determining that fact, consider all the
evidence, facts and circumstances in the case."   The
case of *Small v. Chicago, R. I. &. P. Ry. Co.*, 50 Iowa,
338, in construing Code, section 1289, wherein it is pro-
vided that a corporation "operating a railway shall be
liable for all damages by the fire that is set out or caused
by operating of any such railway," holds that the section
does not impose an absolute liability for such dam-
age, but that liability depends upon the fact of negli-
gence, and, in effect, that proof of damage by fire is a
*prima facie* showing of negligence; or, in other words,
proof of damage by fire raises a presumption of negli-
gence by the company, which, to avoid liability for, it
must overcome by proof.   This presumption, it is urged
to us, is one of law, and hence it is the province of
the courts   *   *   *   to decide what is sufficient to
overcome it."   The instruction asked and refused is in
harmony with this view.   We do not, however, under-
stand the appellants to urge that, in cases of conflicting
or contradictory evidence, the court, instead of the
jury, should decide such questions; for it is said in
argument:   "Of course, if the testimony of witnesses is
itself contradictory, so that different conclusions may

2. ——: ——: ——: ——: presump- tions: instruc- tions to jury.

be reasonably drawn from it, then it would be proper to submit it to a jury.'' The proposition, then, resolves itself to about this: If the evidence is such that but a single conclusion can properly be drawn from it, there is no question of fact for a jury, and the court should declare the law applicable to unquestioned facts. About such a proposition there should be no controversy. The difficulty is more with the condition of the record to show the facts as a basis for the proposition urged. Defendant's negligence, by the finding that the fires were set by the engines, is a fact in the case, unless, for the purpose of the question now under consideration, it is by the defendant's evidence conclusively disproved. Negligence, being presumptively established, has for its support every fact by which it might have been established upon proof; or, in other words, a party disproving negligence must negative every fact the proof of which would justify a finding of negligence. The engines supposed to be the ones that set the fires are numbers 629 and 631. The engineer of number 629 gave the following testimony as to the condition of the engine: ''In my engine the diaphragm in front of the flues is solid. The draught passes under the diaphragm through the netting. The ends of the flues are right back of the diaphragm. The screen netting on the inside of the extension part is keyed in there when the engine is in use, with four keys, closed tight. There is no way for cinders, in coming from the firebox through the flues, to get out of that engine, except through the smokestack, and there is no way to get through the smokestack except through the netting. In coming through the flues they strike the diaphragm, which is horizontal,—slanting. There is nothing better known than this extension front to prevent the escape of fire. It is in general use on all railroads. A netting will last, in one of these extension fronts, from a year to three years. It does not wear out as fast as that in the old

diamond stack. The diamond stack wore out in thirty days. I don't know that I ever saw any sparks strike the ground from my engine. I have seen sparks go out of the stacks, and I have watched them lots of times, and I never saw them strike the ground alive. The cinders accumulate and we dump them out. The great bulk of the cinders do not get through the screen. When it gets filled up we dump them. We don't get any steam if we don't." The court said to the jury "that the use of more or less steam, or a low or high rate of speed, is not evidence of negligence," in regard to handling the engines; and, without approving the rule, it must be taken as the law of the case, for no assignment brings it in question. But, with the facts stated as to the condition of the engines, and that there was no negligence in the use of steam or the rate of speed, can we say that it conclusively appears that the fires were not the result of negligence? In how many different ways the company could have been negligent, so as to have caused the fires, it would be difficult to state; and herein is manifest the exceeding difficulty of overcoming the presumption of negligence by negative proofs. The most that can be said of the proofs in this case is that the fires were not caused by certain acts of negligence. They do not show that the fires were not caused by other acts of negligence in the use of the engine, of which there might be many. The presumptions of the case devolve upon the defendant the burden of showing a negative of such facts, or, at least, to negative an inference of negligence arising therefrom. It may be thought that the rule devolves on railway companies nearly, if not quite, an impossibility of proof in such cases. But that fact cannot change the result. The construction of section 1289 of the Code required a holding of absolute liability for such fires, or such a rule as this as to presumptions.

In the state of Minnesota, when fires are set by a locomotive, the same presumption of negligence seems to obtain; and while the case of *Dean v. Chicago, M. & St. P. Ry. Co.*, 39 Minn. 413; 40 N. W. Rep. 270, differs in some essential particulars from this case, it involves to some extent the same inquiries and application of legal rules; and the court, on the question of the engine being in good repair, intimates a particular in which it might not have been so, as to which there was no testimony. This reference is made only in furtherance of the thought that all facts that might support negligence must be disproved in such a case. The fact was found, and the case must be treated, for the purpose of this question, with the conceded fact, that the engines set the fires. It is, then, proper to consider how large a cinder, spark or coal would live to reach the distance of one hundred and sixteen feet, with the material into which it dropped. These facts, in the minds of the jury, might be sufficient to discredit the testimony of the engineers or others as to the condition of the engine. This particular branch is discussed in *Babcock v. Railway Co.*, 62 Iowa, 593; s. c., 72 Iowa, 197. We are clearly of the opinion that the question of negligence was one for the jury, and that there was no error in refusing the instruction asked.

III. One item of damage for which the plaintiff claimed was two acres of maple and box-elder trees, and for a measure of such damage the court said to the jury: "If you find that the fire ran to the timber of the plaintiff, and burned and injured it, then award him, on account thereof, that sum which represents the difference in the value of the timber just before and its value just after the fire." The appellant's position is that the value of the timber "is such as it might have for cord-wood." The testimony shows that the timber consisted of native-growing trees, which the plaintiff was permitting to grow with

3. —: —: —: damages.

the intention of using it from time to time for wood and other timber. The plaintiff on his own behalf, as a witness, said: "I think I know the reasonable market value of such timber land at or about the time of the fire." He was then asked, "What was its reasonable market value before the fire burned it, per acre? *A.* Twenty-five to thirty dollars per acre.

"*Q.* What was its reasonable maiket value after the fire cut through it, and burned it up, per acre, if you know? *A.* I don't think it was of any value."

This testimony was given under objections as to its competency, and the objections are urged in connection with the assignment as to the instruction refused. It is perhaps fair to say that the instruction considered, in connection with the evidence on which it was based, gave to the jury a rule that the measure of damage was the difference between the value of the timber before and after the fire. The appellant, however, argues the case on the theory that the instruction authorized the jury to consider the damage in connection with the farm. We think neither the evidence nor the instruction authorized such a consideration. No reference is made to the farm in the testimony or instruction. The evidence was as to the value of the timber land, and the instruction is certainly not broader. The plaintiff's damage is not limited to the value of the timber for cord-wood. It was growing timber, being kept for its growth, and had a value in that respect. It was a part of the realty, and its loss affected the value of the realty. It is manifest that the plaintiff suffered no less damage than the difference in the value of the timber land before and after the fire. The testimony was properly directed to such a measure of damage, and the instructions are in harmony with that view. In *Montgomery v. Locke*, 13 Pac. Rep. (Cal.) 401, it is stated that the means by which to determine the damage occasioned by the removal of forest trees, having no value except

as timber, must be quite different from that pursued in determining the value of fruit trees; and it is said that the latter must be estimated with reference to what they are worth in their growing state on the premises. In speaking of forest trees having no value except as timber, the present value must have been intended; that is, that there was no present value, except for the timber in them,—for it is difficult to believe the court would sustain a rule to thus limit the measure of damage in a case of trees of little or no value for present use, but of much value because of prospective growth.

We think the evidence and the instructions given are such that appellant should not complain. AFFIRMED.