## McCULLEN v. CHICAGO & N. W. RY. CO.

(Circuit Court of Appeals, Eighth Circuit. March 26, 1900.)

### No. 1,275.

1. RAILROADS—ACTIONS FOR FIRES—QUESTIONS FOR JURY.

    In an action against a railroad company to recover the value of property alleged to have been set on fire by sparks from passing engines on defendant's road, where the evidence as to whether the fire originated in the manner alleged was conflicting and indecisive, the case was one for the jury, and it was error to direct a verdict for defendant, especially when four successive juries before whom the case was tried had failed to agree.

2. SAME—PROOF OF NEGLIGENCE—PRESUMPTION FROM FACT OF CAUSING FIRE.

    Proof that property has been destroyed by sparks emitted by a passing locomotive creates a presumption of negligence on the part of the railroad company or its employés, either in the construction or handling of the locomotive or in failing to keep it in proper repair.

3. SAME—PROVINCE OF JURY.

    When the evidence for the plaintiff, in an action against a railroad company to recover damages resulting from a fire alleged to have been caused by sparks from a passing engine, is sufficient to establish such fact, and thus creates a presumption of negligence on the part of defendant, the case

should be submitted to the jury, unless the rebutting evidence as to due care is so clear and circumstantial that no reasonable person could doubt its verity.

In Error to the Circuit Court of the United States for the District of South Dakota.

George C. Cooper, for plaintiff in error.

C. I. Crawford (A. W. Burtt, on the brief), for defendant in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

THAYER, Circuit Judge. This action was brought by Maggie McCullen, the plaintiff in error, against the Chicago & Northwestern Railway Company, the defendant in error, to recover the value of a steam flouring mill located in the town of St. Lawrence, county of Hand, state of South Dakota, which was destroyed, as she claimed, on December 2, 1895, by being set on fire by sparks that were negligently suffered to escape from one of the defendant company's locomotives, which was at the time in charge of its employés and was hauling one of its freight trains. The action was brought originally in a state court, but was removed to the federal court. After the case had been under consideration for about 31 hours by the jury which was impaneled to try the same, and the jurors had failed to agree upon a verdict, they were recalled and directed to return a verdict in favor of the defendant, upon which verdict, so returned by direction of the court, a judgment was subsequently entered. The plaintiff below excepted to such action on the part of the trial court, and brought the case here for review. We are advised by the record, and also by the statements of counsel, that there had been three previous trials of the case upon substantially the same evidence which is contained in the present record, and that in each instance the jury had failed to agree. It has been repeatedly held since the decision in Railway Co. v. Ives, 144 U. S. 408, 12 Sup. Ct. 679, 36 L. Ed. 485, that when the facts proven are such that reasonable men may fairly differ upon the question as to whether there was negligence or not, the determination of that issue is for the jury; and inasmuch as 48 men, who have at various times listened to the evidence in this case, have differed in opinion as to whether the defendant was or was not negligent, we would perhaps be justified in regarding that test as conclusive, and in remitting the case to the lower court to be retried. In view of the numerous trials that have taken place, we have thought it best, however, to consider the testimony attentively, and decide as to its sufficiency to sustain a verdict for the plaintiff, as it would have been our duty to do if the trial court, at the conclusion of the first trial, had of its own motion directed a verdict for the defendant.

The point at issue necessitates a statement somewhat in detail of the facts which were developed at the trial. The defendant's railroad track passes through the town of St. Lawrence from east to west. The plaintiff's mill that was destroyed was situated on the south side thereof, and 302 feet distant therefrom in a direct line. Between the mill and the track were an elevator, close to the track, which was 57 feet high, and on the south side thereof a lower wooden

warehouse. The plaintiff's mill was three stories in height. A considerable space of vacant ground intervened between the buildings last described, and the territory south of the railroad track was generally open and unoccupied. On the roof of the mill, at its northeast corner, was a small ventilator which extended above the top of the roof a few feet. The four sides thereof consisted of thin wooden slats similar to those which are usually employed in constructing window blinds or shades. Directly underneath the ventilator on the third floor was a cyclone dust collector which, when in operation, blew some dust through the slats of the ventilator into the open air. The mill was closed down on Friday previous to the fire, which occurred about 10:30 a. m., on Monday, December 2, 1895, and there were no fires in or about the premises save in a small cannon stove which was located in a one-story office building at the northwest corner of the mill. This office building was not a part of the mill proper, but was connected therewith. In this stove there was a small fire on the morning of December 2, 1895, but the pipe leading therefrom extended above the roof of the mill, and such smoke as escaped from this pipe on that morning drifted in a direction which did not bring it within 20 feet of the ventilator heretofore mentioned. The wind was blowing from the north or from the northwest or from an intermediate point at a rate which was variously estimated by the witnesses at from 10 to 15 miles per hour. About 10:30 a. m. on the morning of the fire a freight train of the defendant company, containing about 30 cars and drawn by 2 engines, passed through the town of St. Lawrence from east to west without stopping. As this train moved through the town opposite to the mill, and for some distance west thereof, it was climbing an upgrade, and the engines were seen by several witnesses to emit considerable smoke, which was described by some of them as being dense and black. Shortly after the passage of the train, and within a period variously estimated at from 10 to 20 minutes, the mill was discovered to be on fire. Two witnesses located the fire when it was first seen as being on the slats on the outside of the ventilator heretofore described, and all agree that the fire was first observed from the outside on or around this ventilator. The plaintiff's husband testified, in substance, that on the first alarm of fire he stepped out of the small office building, and from that point saw a small blaze on the outside of the ventilator; that he entered the mill, and went immediately to the third story or floor, and found no fire on that floor on the inside of the mill underneath the ventilator, nor anywhere else, but that the fire at that time was wholly confined to the slats of the ventilator.

With respect to the issue whether the fire in question was occasioned by a spark from one of its locomotives, the defendant offered much expert testimony to the effect that a spark could not have been emitted by either of its locomotives, and carried a distance of 302 feet from its track, which would have retained sufficient vitality to have set fire to the slats of the ventilator under the conditions which existed at the time the fire took place. On the other hand, a railroad engineer who was called by the plaintiff testified, in substance, that

under such conditions as prevailed on the day of the fire,—with the wind from the north; blowing about 10 miles an hour, and the train moving on an upgrade,—a spark might have been carried 302 feet, and might have set fire to such slats as were in the ventilator, although the ventilator was at a height of 35 feet above the ground, provided the spark arrester of either engine was at the time in a defective condition. Another witness, who met the train in question on the day of the fire a few miles east of the town of St. Lawrence, also testified that the leading or head locomotive was then emitting large sparks, which floated 264 feet from the track, as ascertained by a subsequent measurement. Another witness testified, in substance, that he had, on one occasion previous to the fire, seen sparks emitted by locomotives which were in use by the defendant company that rose to a considerable height, and floated as much as 600 feet from the track, before they expired.

It is hardly necessary to observe that it is not the province of this court to say in which way the issue as to the origin of the fire ought to have been determined. Our sole function is to decide whether, in view of all the testimony, reasonable men, listening to the evidence as it was adduced, might have concluded that the fire was occasioned by a spark from one of the locomotives; and this question must be determined under and subject to the rule that it is the special province of a jury to determine to what extent witnesses are credible, and how far, if at all, their evidence is trustworthy, or is influenced by prejudice, self-interest, or other causes. We have reached the conclusion that there was substantial testimony enough, as we think, to sustain a finding that the mill was set on fire by a spark from one of the defendant's locomotives, provided the jury credited the statements of the plaintiff's witnesses. The considerations which lead us to hold that such a conclusion might have been formed by reasonable men are the following: First, the near relation in point of time between the passage of the defendant's train and the outbreak of the fire; second, the evidence tending to show that the fire caught on the outside of the ventilator, in the slats; third, the positive testimony of one witness that, when it was so discovered, there was no fire on the inside of the mill, underneath the ventilator; fourth, the direction and strength of the wind, which would naturally carry the sparks to the mill; fifth, the testimony tending to show that, as the train passed through the town of St. Lawrence, one or both of the locomotives were emitting volumes of smoke, and were laboring to some extent on an upgrade; sixth, the testimony that the same locomotives were emitting sparks of considerable size, which floated for some distance, when they were only a few miles distant from the town of St. Lawrence on the day of the fire; seventh, the evidence which tended to show that it was by no means impossible for sparks issuing from a locomotive to be carried as far as 302 feet; and, lastly, the lack of evidence as to any other adequate cause for the fire, if the testimony of the plaintiff's witnesses is credible. These facts and circumstances, which the evidence tended to establish, rendered it necessary, in our judgment, to take the opinion of the jury as to the origin of the fire, and would have warranted them in finding that it was kindled by a spark from one of the locomotives.

It is contended, however, by counsel for the railroad company, that even if it be true that there was substantial testimony which tended to show that the fire was occasioned by sparks which were emitted by the passing locomotives, and that even if the jury had so found, yet the fact so established would not have created a presumption that the defendant company or its employés were in any respect negligent. On this ground it is urged that the case was properly withdrawn from the jury, inasmuch as the defendant offered considerable testimony which tended to show that its engines were properly handled, and were provided with spark arresters, which were in a good state of repair on the day of the fire; whereas, the plaintiff produced no direct evidence to the contrary. It is true that there are some cases which hold that the mere fact that sparks have escaped from a locomotive and set fire to adjoining property creates no presumption of negligence on the part of the railway company, either in constructing or handling its locomotive; but the weight of judicial opinion is the other way, and it is now comparatively well settled that a presumption of negligence does arise from the fact that sparks have issued from a passing locomotive of such size or in such volume as to kindle a fire and destroy adjacent property. This doctrine is supported by the consideration that it is the duty of railroad companies, in constructing their locomotive engines, to adopt suitable appliances and safeguards, such as experience has shown will best serve to prevent them from emitting sparks and destroying property, and by the further consideration that such companies or their employés either know or should know whether such a degree of care has been exercised, and what appliances, if any, are actually in use on its engines, and whether they are in a good state of repair; whereas, third persons whose property is destroyed have no such knowledge or means of knowledge, and as a rule can neither prove nor disprove the aforesaid facts without great inconvenience and expense. These reasons have led most courts to hold,—and the doctrine, as we think, should be adhered to,—that proof that property has been destroyed by sparks emitted by a passing locomotive creates a presumption that, through a want of proper care on the part of the owner thereof or its employés, the locomotive in question was not provided with a proper spark arrester, or that it was not at the time in a good state of repair, or that its locomotive was carelessly handled. Spaulding v. Railway Co., 30 Wis. 110, 121; Ellis v. Railroad Co., 24 N. C. 138, 141; Burke v. Railroad Co., 7 Heisk. 451, 462; Railroad Co. v. Reese, 85 Ala. 497, 5 South. 283; Railway Co. v. Horne (Tex. Sup.) 9 S. W. 440; Coates v. Railway Co., 61 Mo. 38; Railroad Co. v. Stanford, 12 Kan. 354; Railway Co. v. Campbell, 86 Ill. 443. See, also, Burroughs v. Railroad Co., 38 Am. Dec. 71, and cases cited in the note; Eddy v. Lafayette, 4 U. S. App. 247, 256, 1 C. C. A. 441, 49 Fed. 807, 812; Frankford & Bristol Turnpike Co. v. Philadelphia & T. R. Co., 54 Pa. St. 350; Steinweg v. Railway, 43 N. Y. 123; Gibson v. Railway Co., 1 Fost. & F. 23; Greenfield v. Railway Co., 83 Iowa, 270, 49 N. W. 95; Dean v. Railway Co., 39 Minn. 413, 40 N. W. 270; Karsen v. Railway Co., 29 Minn. 12, 11 N. W. 122.

It is urged, finally, by the defendant company, that even if its last position is untenable, and if it be conceded that the evidence was

sufficient to raise against it a presumption of negligence, yet, as it offered direct proof that its locomotives were provided with proper spark arresters, which were in good condition, and that they were properly handled on the morning of the fire, it thereby fully rebutted the presumption of negligence which the plaintiff's proof had raised, and that on the latter ground the verdict below should be sustained. We cannot assent to that view of the case. When the plaintiff offered evidence which was sufficient to raise a presumption of negligence, it was the province of the jury to decide whether the defendant's rebutting proof was adequate to overcome that presumption. As was said, in substance, by the supreme court of Minnesota, in Karsen v. Railway Co., supra, a jury is not necessarily bound to accept as conclusive the statement of a witness that an engine was in good order, or carefully and skillfully operated, although there is no direct evidence contradicting the statement. They have a right to consider all the evidence and circumstances bearing upon the condition and mode of operating the engine, as well as the circumstances under which the fire took place. Moreover, if the jury were satisfied, and so found, that the mill was ignited by a spark which came from one of the defendant's locomotives, it may well be that this fact alone would have led them to discredit the statements of the defendant's witnesses concerning the condition of the locomotives and how they were handled, and the right of the jury to discredit them for that reason cannot be denied. Greenfield v. Railway Co., 83 Iowa, 270, 276, 49 N. W. 95. We are of opinion that the correct view is that, when the evidence which is offered by a plaintiff to make out his cause of action creates a presumption of negligence, the case should be submitted to the jury, unless the rebutting evidence is so clear and circumstantial that no reasonable person could doubt its verity. We are not prepared to hold that the presumption of negligence in the case at bar was rebutted by the kind of proof last described, and, not being able to so decide, the case should have gone to the jury. It is accordingly ordered that the judgment below be reversed, and the cause remanded for a new trial.