### RALPH v. CHICAGO & N. W. RY. CO.

(Circuit Court of Appeals, Eighth Circuit. August 29, 1914.)

No. 4113.

1. CARRIERS (§ 320*) — ACTION FOR INJURY TO PASSENGER — QUESTIONS FOR JURY.

> Plaintiff was in charge of a shipment of stock on defendant's railroad from a point in Minnesota to Chicago, including a car load of horses. On reaching Clinton, Iowa, in the night, without notice to plaintiff, the car of horses in which he was riding was taken out of the train and left in the yards. Plaintiff's testimony tended to show that he was not acquainted with the place, was unable to find any one and returned and stayed in the car. The night was very cold and stormy, and he was badly frozen. On the part of defendant, there was testimony tending to show that there was a lighted restaurant at no great distance from the car where plaintiff could have found shelter. It was intended that the car should go through, without stopping for feed and rest. *Held*, that under such testimony there were questions of fact respecting defendant's negligence and plaintiff's contributory negligence which required the submission of the case to the jury, and that it was error to direct a verdict for the defendant.
>
> [Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1118, 1126, 1149, 1153, 1160, 1167, 1179, 1190, 1217, 1233, 1244, 1248, 1315–1325; Dec. Dig. § 320.*]

2. CARRIERS (§ 331*)—INJURY TO PASSENGER IN CHARGE OF LIVE STOCK—CONTRIBUTORY NEGLIGENCE.

> A provision in the contract that plaintiff would "be required" to ride in the caboose did not necessarily make it negligence for him to ride in the car with the horses, where it was with the knowledge of the trainmen and without objection on their part.
>
> [Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1371, 1374–1382; Dec. Dig. § 331.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In Error to the District Court of the United States for the District of Minnesota; Charles A. Willard, Judge.

Action at law by Joe Ralph against the Chicago & Northwestern Railway Company. Judgment for defendant, and plaintiff brings error. Reversed.

The plaintiff in error, a citizen of Minnesota, sued the railway company, an Illinois corporation, in a state court of Minnesota to recover damages for a personal injury to himself while a passenger upon one of its trains, alleged to have been caused by the negligence of its employés. The defendant removed the cause to the United States District Court for the district of Minnesota, where a trial resulted in a directed verdict, and judgment for costs in favor of the defendant, to reverse which the plaintiff prosecutes this writ of error.

Tom Davis and Ernest A. Michel, both of Marshall, Minn., for plaintiff in error.

L. L. Brown, W. D. Abbott, and S. H. Somsen, all of Winona, Minn., for defendant in error.

Before SANBORN and CARLAND, Circuit Judges, and REED, District Judge.

REED, District Judge. [1] The testimony on behalf of the plaintiff shows or tends to show, that on November 11, 1911, a Mr. Dinehart shipped from Slayton, Minn., two car loads of sheep, and one car load of trotting horses consigned to the Chicago Horse Sales Company at the Union Stockyards, Chicago, Ill.; that plaintiff was an employé of Mr. Dinehart and accompanied said stock as caretaker under the usual contract of shipment, leaving Slayton about 4 o'clock in the afternoon of that day on the line of the "Omaha" Railway Company. At Butterfield Junction, about 50 miles from Slayton, the stock was transferred to the defendant company to be carried from that place to its destination, over its own line of road. The stock arrived at the Clinton (Iowa) yards of the defendant at 10:45 p. m. Sunday, November 12, 1911, via Mason City and Belle Plaine, division points on its line of road in Iowa. The plaintiff rode in the car with the horses from Slayton to Clinton with the knowledge of the conductors of the train, and without objection from any of them, to care for the horses and keep them quiet. The weather was somewhat stormy when the train left Slayton, turned cold some time Sunday, and was very cold and stormy, with a high wind, when it arrived at Clinton. At the Clinton yards the car of horses in which the plaintiff was riding was detached from the caboose, the rest of the train, and engine, and left there overnight. The plaintiff testified that he did not know that the car was to be set out at Clinton, and expected it was to go on to Chicago that night; that there was feed for the horses in the car, and he carried his own luncheon and intended to ride in the caboose from Clinton; that when he discovered that the car was separated from the rest of the train he got out and tried to find the caboose and engine, but was unable to do so and went back into the car with the horses, expecting that it would soon start for Chicago; the car not starting

as he expected, he got out to ascertain where in the yard he was; that he saw no one nor any light, and because of the storm, the darkness, and his unacquaintance with the yard he was unable to determine where in the yard he was and returned to the car, where he remained until morning; that he looked out of the car at different times during the night, observed that it was storming, but saw no one, though he heard the movement of engines in the yard; that the weather was exceedingly cold, and during the night his feet were so frozen that he was unable to continue his journey in the morning; that he was attended by physicians of the company, who took him to a hospital in Clinton, where he remained for some six months; that he suffered much pain and severe injuries to his feet from which he will never recover. The extent and character of his injuries are shown by the testimony of physicians.

The principal ground of negligence alleged against the defendant is that its employés in charge of the train and the yard at Clinton failed to inform the plaintiff that the car of horses was to be set out at the Clinton yards and left there overnight; that in consequence of its being so set out he was exposed to the severity of the weather, whereby his feet were frozen producing the injuries of which he complains.

The answer of the defendant admits the receipt of the stock, including the car of horses and the plaintiff therein at Butterfield Junction on November 11, 1911, to be carried by it to Chicago; the stopping of the car in which plaintiff was riding overnight in the yard at Clinton, and that while so in said car he suffered some injuries by exposure to cold; denies that plaintiff was injured because of any negligence upon its part, and alleges that any injury sustained by him while in the car was caused solely by reason of his own neglect, and the risks and hazards necessarily incident to being and riding upon said train and car, which plaintiff well knew, appreciated, and assumed; and denies all other allegations of the petition.

The defendant's conductor in charge of the train from Belle Plaine to the Clinton yards testified that he did not see the plaintiff on his train; that he heard stockmen on the train about 50 miles out of Clinton wondering where the man in the car with horses was; that he did not try to find him or collect his transportation, but told one of his brakemen to ascertain at De Witt, a station 19 miles from Clinton, if there was such a person in the car of horses; that he also informed the yardmaster at the Clinton yards on arrival there that a man was supposed to be in the car of horses, and that he would better look him up. The brakeman testified that before arriving at De Witt he overheard a conversation among some stockmen that they had seen nothing of the man in the car of horses for some time, and that they seemed worried about him; that when they got to De Witt he went to the car of horses, partly opened the door, saw a man in there, and asked him if he was all right, and the man answered that he was, and wanted to know how far it was from Chicago, that he told him about 155 miles; that they would get to the Clinton yards in about 35 or 40 minutes; that there was a restaurant there, where he could get a good hot meal, and could go to the caboose and sleep from there to

Chicago, or could go into the eating house; that he did not know whether his stock was going on or not, but presumed that it was.

Defendant's yardmaster at the Clinton yards testified that the conductor of the train upon its arrival there said that there was supposed to be a man in charge of the car of horses, that he had not seen him, and that "I had better look after him; I did not go to the car to see about him, and didn't see the car itself that I know of."

The switch foreman at the Clinton yard testified that the train in question arrived there at 10:45 p. m., November 12, 1911; that he inspected the cars in that train; that the conductor told him there was a man in a car with horses, and asked me if I wouldn't open that car when I came to it and see if the man in charge was there. I told him I would, and when I came to that car I stood on one of the truss rods and held my lamp up and hallooed, "Old man, are you alive in there?" He said yes; he was lying alongside by the door in a blanket, and when he said he was all right I got down and closed the door. This was 10 or 15 minutes after the train arrived.

The car inspector testified that he went with the switch foreman to the car in question and testified, in substance, the same as the switch foreman, but none of them informed him that the car was to remain there overnight. There is other testimony that there was a restaurant at or near the switchyards, the distance of which from the car in which plaintiff was varied in the estimates of witnesses from 100 to 500 feet; that there were lights in this restaurant and other buildings in or near the yards, and that those lights were burning that night; that the yards consisted of a dozen or more tracks diverging from a lead track; that switch engines were moving in the yards all night; that trains were coming and going, and many men worked in the yards and buildings during the night. The foregoing is the substance of defendant's testimony.

The plaintiff denied making the statements testified to by the brakeman, switch foreman, and car inspector, and denied seeing or knowing of their coming to the car; denied knowing of the buildings or seeing the lights in the yard or of the men working therein, but said that he did hear the movements of engines, but could not tell where they were.

At the conclusion of the testimony the defendant moved for a directed verdict in its favor upon the grounds: (1) That the evidence is insufficient to justify a finding that the defendant was in any way negligent or liable to the plaintiff; (2) that the injuries resulted from plaintiff's own fault and neglect without any fault upon the part of the defendant or its employés; (3) that under the contract of carriage in question plaintiff was bound to ride and remain in the caboose with which the train was provided; (4) that the plaintiff assumed all risk of the injury which he sustained; (5) that the failure to notify plaintiff of the delay of the car at Clinton was not the proximate cause of his injury; and (6) that the plaintiff had ample opportunity to leave the car and go to a place of comfort and safety after its arrival in Clinton. The motion was overruled by the court. The case was then argued to the jury in behalf of both parties, the jury charged, and it

retired the afternoon of April 23, 1913. In the morning of April 24th it was brought into court and asked by the court if it had agreed upon a verdict. The foreman answered that it had not, and was not likely to agree. The court addressing counsel for the defendant then said, "You may renew the motion for a directed verdict," which was accordingly done, and the court said, "The court grants the motion," and a verdict and judgment were entered accordingly, to which the plaintiff duly excepted. Upon what ground the motion was sustained does not appear.

The testimony, a brief statement of which is set out above, shows without dispute that the plaintiff, a stockman 53 years old, in care of a car of horses, rode in the car with them from Slayton to the Clinton yards, where it was detached from the caboose and the rest of the train and engine and left overnight; that the destination of the car was Chicago, where it would have arrived early the next morning but for its delay at Clinton; that the plaintiff did not know, and was not informed by any of the trainmen or yard employés, that it was to be left at Clinton. The defendant's testimony tends to show that the Clinton yard was lighted and a number of men working there during the night; that there was a restaurant or eating house near the yards, and other places where the plaintiff could have obtained comfortable accommodations and avoided exposure to the cold, and that it was solely because of his own want of ordinary care to protect himself and his assumption of the risk of riding upon the train and in the car of horses that he suffered the injuries of which he complains. At the close of the testimony the defendant moved for a directed verdict in its favor upon these grounds, which motion was denied by the court, and correctly so, we think, because the testimony was such as to require its submission to the jury for determination. After the jury had been out overnight and reported in the morning that it was unable to agree, the court upon its own motion requested counsel for the defendant to renew its motion for a directed verdict, which being done, the court then directed the jury to return a verdict in favor of the defendant, which was done and a judgment entered thereon for the defendant for costs. In this we think the court erred, for disputed questions of fact must be submitted to a jury for determination, unless waived by the parties. It is only when testimony is undisputed, or is so convincing or conclusive that reasonable impartial minds should reach but one conclusion, that the court may withdraw it from the jury and determine, as matter of law, that the verdict must be in favor of one of the parties. The trial court recognized this rule in first denying defendant's motion for a directed verdict, and submitted the disputed questions of fact to the jury upon instructions quite as favorable to the defendant as it could rightly expect. Counsel for defendant do not question the rule, but insist that from the testimony of its employés it conclusively appears that plaintiff, by the exercise of ordinary care, could have avoided exposing himself to the severity of the weather by obtaining shelter in the restaurant or some of the other buildings in or near the Clinton yards. But this ignores entirely the plaintiff's evidence as to the condition in

which he was placed by setting out the car without being informed that this was to be done, his entire ignorance of his surroundings and the condition in which he found himself by being left alone with the horses in a railroad yard of many tracks on a dark and stormy night.

The shipping contract upon which plaintiff was riding contains a request, signed by him, that the time for confining the stock in the car without unloading for food, water, and rest be extended from 28 to 36 hours, and it may be said that he must have known it was to be unloaded before reaching Chicago, and might be in the Clinton yards. But the shipment left Slayton at 4:10 p. m. Saturday, November 11th, and the 36-hour period would not expire until 4:10 a. m. of November 13th, and the train arrived at Clinton at 10:45 p. m. on the 12th, or 6 hours before the expiration of the 36-hour period. It might very properly be said that if the car was to be set out before the expiration of this period, the plaintiff should be informed thereof. The 36-hour period from Slayton was obviously intended to enable the carriage of the stock to Chicago without unloading for food and rest.

[2] Again, it is said the plaintiff was bound under the shipping contract to ride in the caboose, and that it was his own fault in not doing so. The contract contains this provision, among others:

"Men actually in charge of live stock will be required to ride in the caboose attached to the train, and are prohibited from getting on or off cars or walking over them, while they are moving."

This only provides that the plaintiff *will be required* to ride in the caboose. But the trainmen knew that he was riding in the car with the horses, and instead of requiring or even requesting him to ride in the caboose, he was permitted to ride in the car without objection, and a brakeman at Belle Plaine, the plaintiff says, requested that he ride in the car with the horses.

The waybill accompanying the car of horses contains upon its face, among other things the following:

"George Ralph in charge Clinton yards unloaded 6:00 A. M., 11/13/11. Reloaded 4:30 P. M., 11/13/11. Fed—watered—rested. Car O No. 23816. Shipper, C. E. Dinehart; destination, Chicago Horse Sales Company, U. S. Yards."

Defendant's testimony shows without dispute that the car arrived at the Clinton yards at 10:45 p. m., November 12th. An indorsement thereon shows that the car of horses was not unloaded until 6 a. m. the next morning. This indorsement was obviously made after the horses were unloaded, and presumably at the time they were reloaded. It appears, therefore, that they remained in the yards for something over eight hours, and that the plaintiff was with them during that time.

The defendant cites and relies upon the decision of this court in McCullen v. C. & N. W. Ry. Co., 101 Fed. 66, 41 C. C. A. 365, 49 L. R. A. 642, as authorizing the direction of this verdict in its favor because of the failure of the jury to agree. The cited case does not support such contention. That case, it appears, had been three times tried upon substantially the same testimony, and each time the jury failed to agree. It was again tried the fourth time upon the same

testimony and submitted to a jury which, after deliberating for 30 hours without reaching a verdict, was recalled and directed to return a verdict for the defendant. Of this proceeding, Judge Thayer, speaking for this court, said:

"It has been repeatedly held since the decision in Railway Co. v. Ives, 144 U. S. 408, 12 Sup. Ct. 679, 36 L. Ed. 485, that when the facts proven are such that reasonable men may fairly differ upon the question as to whether there was negligence or not, the determination of that issue is for the jury; and inasmuch as 48 men, who have at various times listened to the evidence in this case, have differed in opinion as to whether the defendant was or was not negligent, we would perhaps be justified in regarding that test as conclusive, and in remitting the case to the lower court to be retried. In view of the numerous trials that have taken place, we have thought it best, however, to consider the testimony attentively, and decide as to its sufficiency to sustain a verdict for the plaintiff, as it would have been our duty to do if the trial court, at the conclusion of the first trial, had of its own motion directed a verdict for the defendant."

The court then refers to the testimony, reverses the judgment, and remands the cause for another trial. The fact that 12 men have listened to the evidence and failed to agree upon the question of defendant's negligence and the plaintiff's contributory negligence is but little, if any, less cogent that the question of such negligence should be again tried.

Of the testimony in this case we express no opinion as to the ultimate facts that should be found therefrom, and only say that it should have been submitted to the jury to determine therefrom the alleged negligence of the defendant, the contributory negligence of the plaintiff, and any other disputed questions of fact. The court erred, therefore, in withdrawing it from the jury and itself determining these disputed questions. The judgment is reversed, and the cause remanded for new trial.

Reversed.