## TURNER SIMPLICITY MFG. CO. et al. v. BREMNER.

### No. 8638.

Circuit Court of Appeals, Eighth Circuit.
April 14, 1930.

R. J. Bannister, of Des Moines, Iowa (Harley H. Stipp, E. D. Perry, Vincent Starzinger, and Fred A. Little, all of Des Moines, Iowa, and McCoy & McCoy, of Oskaloosa, Iowa, on the brief), for appellants.

Donald Evans, of Des Moines, Iowa (J. A. Devitt, of Oskaloosa, Iowa, and Clifford V. Cox and William F. Riley, both of Des Moines, Iowa, on the brief), for appellee.

Before STONE and VAN VALKEN-BURGH, Circuit Judges, and DAVIS, District Judge.

VAN VALKENBURGH, Circuit Judge.

This is a suit to recover damages for the setting out of a fire by an engine of the Minneapolis & St. Louis Railroad Company, of which appellee is receiver. The Turner Simplicity Manufacturing Company is an Iowa corporation engaged in the manufacture and sale of gasoline engines, with its principal place of business at Oskaloosa in said state. Its plant there consisted of a main factory building two stories high, one hundred feet in length from east to west, and forty feet in width. On the east there was an addition, thirty feet in length, and a shed twelve feet wide was attached to the south side of the main building. The south wall of this shed was distant about twenty-five feet north from the center line of the main track of the Minneapolis & St. Louis Railroad. There was on the premises also an office building described as being about a quarter of a block east from the factory. The Chicago, Burlington & Quincy Railroad runs east from Oskaloosa practically parallel with the Minneapolis & St. Louis Railroad at this point, and is located about seventy-five or eighty feet north of the Turner Simplicity plant. The fire occurred August 1, 1927, and was discovered about 3:40 p. m. On this point there is no dispute. About fifteen or twenty minutes before the fire was discovered a train of the Minneapolis & St. Louis Railroad passed the factory building, going west upon the main track. The engine was working steam and puffing smoke and sparks as it passed. The fire started at the southwest corner of the shed. The prevailing wind at that time was from the southwest, as the greater number of witnesses testify. It was strong enough to cause some apprehension

for the safety of an ice plant situated about two hundred and seventy feet north of the burning factory building. There was some testimony that the wind was from the northwest, but this apparent conflict is reconciled and explained. William Pyle, fire chief, testified as follows:

"When we got to the plant the building was pretty well involved in flames. When we arrived at the fire the wind was right in the west. * * * When we first arrived there, while we were there fighting the fire, there was a change in the direction of the way the smoke and flames were carried. The wind changed from the west, practically to the northwest. It changed in about twenty minutes after we arrived at the fire to the northwest."

It is testified that "the firemen were quite a while getting there." The witness A. W. McCrary, employed at the ice plant, testified that he knew the wind shifted, because at a later period there was less heat felt at his plant than at the early stages of the fire. It is evident, therefore, that the direction of the wind did not remain constant throughout.

The witnesses are substantially in accord as to the time which elapsed between the passage of the train and the discovery of the fire. Frank Bledsoe, employed at the factory, saw the train go by. In about twenty minutes he was notified that the building was on fire. Joseph Watry, working with him, says he saw this afternoon passenger train pass, about ten or fifteen minutes, as he thinks, before he was told of the fire. Ed Sheppard, section foreman on the Chicago, Burlington & Quincy railroad, said:

"I had been working that afternoon about two miles southeast of Oskaloosa. It would be right at three miles from the depot. The afternoon passenger train on the M. & St. L. road passed on the M. & St. L. track while I was out there that afternoon. We worked a little more after that passed. I couldn't say how long, a few minutes. Then we put on the car and came home. We have a motor car. We were due in the section house at Oskaloosa at four o'clock. We approached the Turner Simplicity plant about twenty minutes, I think, after this train passed us out there. I could not say exactly. * * * I seen fire at the southwest corner just crawling up the corner of the building, the southwest corner of the building. * * * That was the only place we could see any fire."

H. C. Tropp testified thus:

"I was working with Mr. Sheppard. I remember seeing the train of the M. & St. L.

pass us that afternoon out where we were working a mile and a half or three-quarters east of this building. We went into town shortly after that. I suppose it must have been twenty minutes after the train passed until we got in and reached the gasoline engine plant. After we passed the building we discovered the fire. It was on the southwest corner of the building."

Mrs. Ida Smith said she had noticed the section men "going down on the Q track west. They came back just a little while after the passenger train passed. I noticed the fire just before I noticed those men coming back."

Mrs. Myrtle Ross, bookkeeper and stenographer, worked in the company's office east of the factory building. She had occasion, about the middle of the afternoon on which the fire occurred, to go from the office to the factory to get some mailing sacks. The witness Watry got them for her from the upper floor of the building. As she was starting back to the office she chanced to look, through the open doors, the entire length of the factory, and saw grass burning just west of that building. Concerning this, on cross-examination, she testified further as follows:

"Q. How far were you from the west door when you looked through? A. I was on the outside of the east end, on the sidewalk. I don't know. It was the length of the building. I looked clear through the building. I was three or four feet from the front door of the factory building. I thought it was grass burning. We had had grass burning on both sides of it by both railroads for a week or two. I looked back and saw through the building this grass burning to the west of the factory.

"Q. How large a fire was it? A. It wasn't large enough to be called a fire. It was just a little grass burning like I had seen burning all around us. It was not as large as the top of the reporter's table there."

About twenty minutes after she saw this grass burning she was told that the factory was on fire, and "saw the fire sweeping over the top of the building from the west. The wind was strong from the southwest then."

Bledsoe and Watry, factory employees, that afternoon before the fire had been working at the east end of the building. They were loading a gasoline engine upon a transfer truck for delivery to the railroad for shipment. Bledsoe in his cross-examination stated that they were engaged in loading this engine on the truck when the train went by, and that Mrs. Ross came for the sacks, or mailing envelopes, before they loaded the

truck. On redirect examination he gave the following testimony:

"Q. Had you started that job of putting the engine on Blake's truck when Mrs. Ross came over there after the mailing sacks? A. I could not say whether we had or not.

"Q. Well, had you finished loading the engine on Blake's truck when she came over there? A. I could not say.

"Q. Had you observed, Mr. Bledsoe, at any time before this fire whether there was any grass and weeds along the south side and at the west end of this building? A. Yes.

"Q. Was there or was there not? A. There was. Along between the main part of the building and the silo."

In this state of the testimony the court, being of opinion that fire had been seen near the west end of the building prior to the passage of the train, and that it was at least equally probable that the fire originated from that source, sustained defendant's motion for a directed verdict.

The Iowa Code of 1927, § 8160, provides that:

■ "Any corporation operating a railroad shall be liable for all damages sustained by any person on account of loss of or injury to his property occasioned by fire set out or caused by the operation of such railway."

The Supreme Court of Iowa has construed this statute thus:

"Under the statutes proof that a fire and resulting damage was due to the operation of a railway not only imposes upon the company the burden of showing due care, but raises a presumption of negligence which has the force of substantive evidence, even after proof of due care." Stewart v. Iowa Central Ry. Co., 136 Iowa, 183, 113 N. W. 764; Greenfield v. Railway, 83 Iowa, 270, 49 N. W. 95; Hemmi v. Railway, 102 Iowa, 25, 70 N. W. 746.

To this construction that court has consistently adhered. This court has had occasion to pass upon the statute in question in the light of the ruling of the state Supreme Court, and has held that the construction placed upon that statute is binding on the federal courts. Iowa Central Ry. v. Electric Light & Power Co. (C. C. A.) 204 F. 961; Canadian Northern Ry. Co. v. Olson (C. C. A. 8) 201 F. 859. See, also, St. Louis & San Francisco Ry. Co. v. Mathews, 165 U. S. 1, 17 S. Ct. 243, 41 L. Ed. 611; Jones v. Brim, 165 U. S. 180, 182, 17 S. Ct. 282, 41 L. Ed. 677; Hines v. Rittenberg (C. C. A. 4) 262 F. 87.

■■ It is accepted that the setting out of a fire by sparks from an engine may be established by circumstantial evidence. In this case appellants proved that there was inflammable material, such as grass and weeds, along the south and west sides of the burned building; that appellee's train, its engine working steam and emitting smoke and sparks, passed at a distance of twenty-five feet but a few minutes before the fire was discovered; that a fairly strong wind at the time was blowing from the train toward the factory; that there was within the building nothing to which the origin of the fire could be ascribed. From this evidence there was made a prima facie case, both of setting out the fire and of negligence. Nothing in rebuttal was offered. Even though testimony in rebuttal is offered and received, it is uniformly held that the case is for the jury. Greenfield v. Chicago & N. W. Ry. Co., 83 Iowa, 270, 49 N. W. 95; Hemmi v. Chicago G. W. Ry. Co. et al., 102 Iowa, 25, 70 N. W. 746; Howard & Harper v. C., B. & Q. R. Co., 196 Iowa, 1378, 195 N. W. 153; Russell v. C., M. & St. P. Ry. Co., 195 Iowa, 993, 191 N. W. 806, 192 N. W. 267; McCullen v. Chicago & N. W. Ry. Co. (C. C. A. 8) 101 F. 66, 49 L. R. A. 642; Canadian Northern Ry. Co. v. Olson (C. C. A. 8) 201 F. 859, 861; Iowa Central Ry. Co. v. Hampton Electric Light & Power Co. (C. C. A. 8) 204 F. 961; Hines v. Rittenberg (C. C. A. 4) 262 F. 87.

But counsel for appellee invoke the rule that the party having the burden of proof is not entitled to go to the jury when the evidence is in such equipoise that the liability of the defendant is merely consistent with the circumstances shown. It is urged that the evidence must be such as to indicate that the alleged cause of the fire was the more probable, and that, where a party relies upon circumstantial evidence to establish the cause of a fire, the evidential circumstances must not only be consistent with the claimed cause, but must be such as to negative the probability of any other cause. Reliance is placed, among others, upon the following decisions: Gibson v. Iowa Central Ry. Co., 136 Iowa, 415, 113 N. W. 927; Dingmon v. C. & N. W. R. Co., 194 Iowa, 721, 190 N. W. 393; O'Connor v. C., R. I. & P. R. Co., 129 Iowa, 636, 106 N. W. 161; Weber v. Davis, 198 Iowa, 785, 200 N. W. 207; Kearney v. Town of De Witt, 199 Iowa, 530, 202 N. W. 253; Hall v. C., R. I. & P. R. Co., 199 Iowa, 607, 199 N. W. 491.

With the general principle announced there can be little quarrel; the difficulty lies in its application. The Supreme Court of

Iowa, in Eisentrager v. Great Northern Railway Co., 178 Iowa, 713, 160 N. W. 311, 315, L. R. A. 1917B, 1245, while recognizing and enforcing this principle, said:

"We agree, of course, that when facts and circumstances are such that reasonable men, unaffected by bias or prejudice, may disagree as to the inference or conclusion to be drawn from them, there is a case for a jury."

And in Russell v. C., M. & St. P. R. Co., 195 Iowa, 993, 996, 191 N. W. 806, 807, 192 N. W. 267, the court, after making a summary of the evidence, and in reply to the insistence that a directed verdict should be given in favor of defendant, said:

"It is very clear that the court could not say as a matter of law, that the fire did not originate from the sparks from defendant's engine. The jury could have found that it did so originate. This being so, plaintiff made a case for the jury on the question of negligence."

The governing rule is thus well stated by Judge Thayer for this court in McCullen v. Chicago & N. W. R. Co., 101 F. 66, 69, 49 L. R. A. 642:

"When the evidence for the plaintiff, in an action against a railroad company to recover damages resulting from a fire alleged to have been caused by sparks from a passing engine, is sufficient to establish such fact, and thus creates a presumption of negligence on the part of defendant, the case should be submitted to the jury, unless the rebutting evidence as to due care is so clear and circumstantial that no reasonable person could doubt its verity."

[4] The conclusion is that, when a plaintiff has made a prima facie cause of action, the case should be submitted to the jury unless the countervailing facts and circumstances are so clear and convincing that no reasonable person could doubt their verity and effectiveness.

The position advanced by appellee, as above, is based upon the testimony of Mrs. Ross that, when she visited the factory for mailing sacks, she saw a small fire in the grass west of that building; and upon the statement of Bledsoe, on cross-examination, to the effect that Mrs. Ross came before he and Watry loaded the gasoline engine upon the transfer truck, and that the train passed while this loading was in progress. From this it is argued that a fire had been set out in the grass west of the plant prior to the passing of the train, and that it was equally probable that the factory building caught fire from this source. Such was the view of the trial court.

This conception ignores the quoted redirect examination of Bledsoe, which neutralizes his testimony upon which appellee relies, and renders it of little probative effect. But aside from this, the very slight difference in the testimony of all the witnesses as to the lapse of time between the passage of the train and the discovery of the fire thereafter is significant. A directed verdict should not be based upon so narrow an estimated margin of time as is sought to be deduced from the testimony of Bledsoe and Mrs. Ross. The passing of the train and the discovery of the fire both took place within a period of fifteen or twenty minutes. It was in evidence that there was vegetation between the tracks of the two railroads, and that some of it had been cut down and burned; that these operations had been conducted "off and on for ten days." But, when Sheppard and Tropp approached the factory from the west on their railway motorcar, they saw no one there burning weeds, nor any other fire than that creeping up the southwest corner of the building. Taking into consideration the uncertainty of Bledsoe's testimony, the substantial agreement of the different witnesses as to the time when the train passed and the fire appeared, and all other surrounding circumstances, it seems to us that the jury might legitimately have found that Mrs. Ross did not visit the factory before the train passed, and that the fire she saw west of the building was probably set out by the train.

A case not unlike this in principle and analogy of circumstance is found in Howard & Harper v. C., B. & Q. R. Co., 196 Iowa, 1378, 195 N. W. 153. A Wabash and a Burlington train passed, within a few minutes of each other, the building which subsequently burned. It was urged that the cause of the fire was problematical and conjectural; that it might have been caused by a spark from the engine of the Wabash train which passed over the same track as appellant's train, a few minutes before. There was a large amount of testimony offered with respect to the operation of both trains. It was held that the evidence presented a case for the determination of the jury. So, here, we find that the evidence of the setting out of the fire by appellee's engine was so substantial that the question was fairly for the jury to determine whether that was the more probable cause of the fire, and that the court below erred in refusing to submit that ques-

tion. It follows that the judgment must be reversed, and the case remanded for a new trial.