Babcock et al. v. The Chicago & Northwestern R'y Co.

BABCOCK ET AL. v. THE CHICAGO & NORTHWESTERN R'Y CO.

| | |
|---|---|
| 62 | 593 |
| 78 | 395 |
| 62 | 593 |
| 88 | 276 |
| 62 | 593 |
| 88 | 237 |
| 62 | 593 |
| 90 | 151 |
| 62 | 593 |
| 102 | 29 |
| 62 | 593 |
| 136 | 185 |

1. **Railroads:** FIRE BY SPARKS FROM ENGINE: PRIMA FACIE EVIDENCE OF NEGLIGENCE. Under the last clause of section 1289 of the Code, the fact of an injury resulting from fire caused by sparks escaping from an engine is *prima facie* evidence of negligence, which the defendant must rebut. *Small v. The C., R. I. & P. R'y Co.*, 50 Iowa, 338, followed.

2. ———: ———: NEGLIGENCE: CIRCUMSTANTIAL EVIDENCE TO PROVE. The doctrine announced in *Gandy v. The C. & N. W. R'y Co.*, 30 Iowa, 420, that the fact of negligence on the part of a railway company in setting out a fire by sparks from an engine may be established by circumstantial evidence, *held* to apply as well where the testimony is offered by way of rebuttal, as where it is produced in making out the case in chief; and such evidence so introduced in this case was properly submitted to the jury.

3. ———: ———: EVIDENCE. From the fact that some of the conditions under which two fires set out at about the same place by sparks from a locomotive engine, one of which caught within the right of way of the defendant, were the same, it cannot be inferred that the other fire also caught within the right of way, and the admission of evidence of the similarity of such conditions, for the purpose of raising such inference, was erroneous.

ON REHEARING.

4. ———: ———: NEGLIGENCE: CONFLICT IN EVIDENCE: WHAT CONSTI-
TUTES. In an action against a railway company for damages caused by
the negligence of the defendant in setting out a fire by sparks from its
engine, the occurrence of the fire is, under the statute and the decisions
of this court, *prima facie* evidence of negligence on the part of defend-
ant. With this *prima facie* evidence on one side, and the direct evi-
dence of defendant on the other side that it was not negligent, there
arises a conflict, which it is the duty of the court to submit to the jury.
Much more does such a conflict arise where, as in this instance, the
*prima facie* case made by the occurrence of the fire is corroborated by
circumstantial evidence of the defendant's negligence.

*Appeal from Marshall Circuit Court.*

SATURDAY, DECEMBER 15.

THIS is an action to recover damages for property destroyed
by a fire set out by an engine on the defendant's road. There
was a jury trial, resulting in a verdict and judgment for plaint-
iff for $497.80. The defendant appeals.

*Hubbard, Clark & Dawley*, for the appellant.

*James Allison* and *Caswell & Meeker*, for appellees.

DAY, CH. J.—The defendant complains of the action of
the court in refusing to instruct that, as a matter of law,
the defendant had overcome the presumption, raised by the
statute, of negligence, in cases where fire is set by locomo-
tives, and in submitting to the jury the questions whether
the defendant's engine was equipped with the best known ap-
pliances for arresting sparks and cinders; whether it was in
good order, and was properly and skillfully run by the engi-
neer in charge. It is insisted that there is an entire absence
of conflict in the testimony that the engine was supplied with
the best means of preventing the escape of fire, that it was in
good order, and that it was properly handled.

The testimony of the employes of the defendant is to the
effect that the engine was supplied with the very best contri-

vances as to ash-pans, spark-arresters and nettings; that they were examined both before and after the trip on which the fire was set out, and were found in good order, and that the engine was managed in a proper and skillful manner.

The evidence shows that the size of the meshes in the nettings is three-sixteenths of an inch. Before the enactment of the last clause of section 1289 of the Code, it was held that the setting of fire from an engine did not create a presumption of negligence on the part of the company, but that the burden of proving negligence was upon the plaintiff. *Gandy v. C. & N. W. R'y Co.*, 30 Iowa, 420. Under the last clause of section 1289 of the Code, it has been held that the fact of an injury resulting from fire caused by sparks escaping from an engine is *prima facie* evidence of negligence, which the defendant may rebut. *Small v. C., R. I. & P. R. Co.*, 50 Iowa, 338. Under this decision, the effect of the statute is simply to change the burden of proof.

<span style="font-variant: small-caps">1. Railroads: fire by sparks from engine: prima facie evidence of negligence.</span>

It is evident, however, that the proof offered by the plaintiff, whether in chief to establish evidence *prima facie*, or to rebut the evidence of care introduced by the defendant, must of necessity, when it is directed to the condition of the defendant's engine, be of a circumstantial character. Ordinarily the plaintiff could not introduce witnesses who could testify from a personal knowledge of the condition of the defendant's engine.

In *Gandy v. C. & N. W. R'y Co.*, *supra*, the following language is employed: " But as, in the nature of the case, the plaintiff must labor under difficulties in making proof of the fact of negligence, and as that fact itself is always a relative one, it may be satisfactorily established by evidence of circumstances bearing more or less directly upon the fact of negligence, which might not be satisfactory in other cases free from difficulty and open to clearer proofs, and this upon the general principle of evidence, which holds that to be sufficient or satisfactory which

<span style="font-variant: small-caps">2. ——: ——: negligence: circumstantial evidence to prove.</span>

ordinarily satisfies an unprejudiced mind." 1 Greenl. on Ev. § 2. This principle is as applicable to a case where the testimony is offered by way of rebuttal, as where it is produced in making out the case in chief; for, in both cases, the plaintiff labors under the same difficulties. E. P. Thompson, on behalf of the plaintiffs, testified as follows: "I went there as soon as ever we got the fire out, and looked to see where it was done, and I was satisfied from the condition of the ground that it caught on the right of way, and I should think as much as five feet from the fence. I saw quite little chunks of cinders that looked fresh and bright, and I am sure there was no frost or rain on them. I would think some of them were as large as the end of my thumb, or perhaps the size of half a walnut. I would think from the appearance and surroundings that it was just burned. That was my judgment at the time. The little ashes from the grass lay there perfectly bright and dry. I don't know anything more than that. That was immediately around it, and there was a little place each way from it where the ashes were black and dead, which showed plainly there was rain or frost or snow on them, after they were burned. You could distinguish very readily the difference between the two, where they were fresh and where they were burned before."

The evidence shows that the defendant had burned over its right of way, but that, in places, unburned patches of grass had been left. J. O. Chapman, a witness for the defendant, testified upon cross-examination that, if a spark half as large as a walnut should be thrown from an engine, burning so as to set grass on fire, he could not tell where it could have been thrown from, unless it came from the stack; that it could not come through the holes in the nettings, and if the damper was shut tight it could not have come from that, and that, if it came out of the stack, he would say as an expert that the nettings had given away. It is in evidence that the life of a netting does not exceed two months, and very often they wear out in much less time. There is no

3. ——: ——:
evidence.

evidence in the record, as we have discovered, how long the netting in question had been used. If the cinders referred to by the plaintiff came through the netting, it was not in good order when it returned from the trip, and if the defendant's witnesses are mistaken about the netting being in good order when the engine returned, it follows that absolute reliance is not to be placed upon their testimony that it was in good order when it went out. Now, clearly, it was a question of fact for the jury whether the cinders referred to by the plaintiff set out the fire. If they did, the jury would have been authorized to find from the testimony, either that the engine was not in good order, or that it was not skillfully managed. The court could not determine this question against the plaintiff, as a matter of law, or withdraw this evidence from the consideration of the jury. As bearing somewhat upon this question, see *Karson v. M. & St. P. R'y Co.*, 29 Minn., 12.

II. A. L. Mead, a witness on behalf of the defendant, testified that there had been several fires on Mr. Thompson's land, before the fire in question, and that these fires had an influence on the company in regard to exercising care about the right of way. The evidence further shows that the locality in question is on a grade of thirty-five or forty feet to the mile, that trains generally work steam pretty hard when they get to the foot of the hill, in order to strike the foot of the hill at good speed, and that sparks are thus emitted. Noonan, a witness for the defendant, on cross-examination, stated that there was a pile of fence boards by the right of way, which took fire, and that the fire spread from them, and burned the grass on the right of way, and ran into the field.

The plaintiff, Thompson, upon being recalled, testified that the fire referred to by Noonan occurred in April, 1879, about two months after the fire in question in this suit. Against the objection of the defendant, this witness was permitted to testify that there was no more grass up where this pile of boards lay, that caught fire on the right of way, than there

was down where the fire in question in this suit caught. It was a very controverted question in this case whether the fire caught on the right of way, or outside of the right of way on plaintiff's premises. This testimony could not possibly have any proper bearing upon the case, unless it would justify the inference, from the fact that it caught where there was no more grass than where the fire in question is supposed to have caught, that this fire also caught on the right of way. But the conditions under which fires are put out are so variant, that, from evidence that one caught on the right of way, no inference can properly be drawn that another did also. Besides, the evidence affirmatively shows that the conditions under which these fires caught were not the same, as the one occurring in April caught in a pile of lumber. This evidence was improperly admitted, and we cannot say that the defendant was not prejudiced by it. Referring to the other fires spoken of by the witness Mead, Thompson was permitted to testify, against the objection of the defendant, that all of them except one caught on the right of way. This testimony, we think, was properly admitted to rebut the testimony of Mead, that the frequency of the fires had an influence upon the company in regard to exercising care about the right of way. In view of what has been said, we do not deem it necessary to pass upon the other questions discussed by appellant. For the error in admitting the testimony above referred to, the judgment is

REVERSED.

OPINION UPON REHEARING.

BECK, J.—I. Upon defendant's petition, a rehearing was allowed in this case, and it has been again argued. Upon the reargument counsel insist, in effect, that there is

4. ——: ——:
negligence:
conflict in
evidence:
what consti-
tutes.

no conflict upon the question of defendant's care, which, they claim, was established without contradictory proof, and that the circuit court upon this ground should have taken the case from the jury and directed a verdict for the defendant.

It is difficult to understand how it can be fairly claimed that there is an absence of evidence tending to show defendant's negligence, in view of the fact that, under the statute and decisions of the court, the occurrence of the fire is *prima facie* evidence of defendant's negligence. The fire itself is evidence of negligence. It is, however, only *prima facie* evidence. But it establishes negligence, which must be regarded as a fact until other contradictory evidence requires a different conclusion. There must of necessity be conflicting evidence in the case. The fire under the law is evidence of defendant's negligence; the good condition of the engine, the diligence of defendant's employes, and other facts, are evidence of defendant's care. Here is conflicting evidence which must be determined by the jury.

II. But, waiving this view, we think that, leaving out of consideration the *prima facie* evidence of defendant's negligence afforded by the fact of the fire, there is a conflict in the proof touching defendant's care.

The fact of the fire is not disputed. The point to be determined in the case upon the evidence is as to its origin, and whether it was through defendant's negligence. The fire was discovered within ten or fifteen minutes after defendant's train had passed the place. It started on the right of way of the defendant. These facts were all readily discovered. There could be little uncertainty as to either. It is not shown that another engine passed after the train just referred to, and before the fire was discovered. Fresh cinders—that is, cinders recently thrown from the engine, some of them the size of the end of a man's thumb, were found at the very place where the fire started. The character of these cinders, and that they were recently burning coals, was readily determined by their appearance. These circumstances and facts are all proper to be considered in determining the origin of the fire. It cannot be doubted, and is not denied, that cinders of the size of those found at the place could not come from an engine having sufficient netting to prevent the spread

of fire.   If they were thrown from the engine, then was defendant negligent.   The facts we have recited show that the cinders were thrown from the engine passing just before the fire.   These facts tend to show that the netting of the engine was not in good order.

But there was direct evidence tending to show that the netting was in good order.   Defendant's employes so testify. Here is a direct conflict.   The jury, under the rules of the law, are to determine which shall outweigh—this direct evidence, or the circumstances we have above stated.

Counsel insist "that there is no conflict in the testimony that the engine was supplied with the best means of preventing the escape of fire, was in good order, and that it was properly handled.   The testimony of defendant's employes is uniform to this effect, and shows that the engine was examined just before and just after it set out the fire."   It may be admitted that all the direct evidence was on the defendant's side. But there were contradictory circumstances on the side of plaintiff.   And it is a thing of frequent occurrence that circumstances given in evidence overcome direct testimony.   It cannot be said that, on the question of defendant's negligence, there was no conflict of evidence.

The opinion first filed in the case states that there was no evidence showing how long the netting had been in use.   This is a mistake, it being shown that the netting had been used for two weeks.   But, on the other hand, it is proved by one of defendant's own witnesses, who was in its employment in repairing engines, and was familiar with the subject, that in some instances nettings wear out in ten or fifteen days.   But it is shown that they are ordinarily sufficient for six weeks or two months.

We remain satisfied, after the reargument, with our former opinion, and adhere to it.