## Cincinnati, New Orleans & Texas Pacific Railway Co. v. Winkle.

(Decided June 5, 1912.)

## Appeal from Mercer Circuit Court.

1. Railroads—Action Against for Destruction of Property Caused by Emission of Sparks from Engine—Evidence—Competency of.— In an action against a railroad company for damages caused by emission of sparks from its engine, the testimony of witnesses generally upon their observation as to the height and distance sparks are thrown is competent and admissible to throw light upon that issue.

2. Railroads—Emission of Sparks from Engine—Evidence—Submission of Question to Jury.—Although an improved spark arrester was used the fact that sparks had been seen flying in large showers into a field and had as well been seen to set fire to a fence alongside the railroad, was sufficient to take the case to the jury, and to authorize them to believe that these facts evidenced that the arrester was out of proper order, or was improperly adjusted.

3. Railroads—Spark Arrester—Instructions.—The jury could not have been misled by the phraseology of the instruction complained of, for the wording of the instruction made it clear to the jury that the appliance alone necessary was the single appliance constituting a spark arrester.

E. H. GAITHER for appellant.

EMMET PUYEAR, ROBERT HARDING and JOHN WELCH for appellee.

OPINION OF THE COURT BY JUDGE WINN—Affirming.

Appellee, William Winkle, in April, 1910, owned a tract of land just south of the Kentucky river and east of the appellant railway company's line. In April, 1910, a barn on this farm with a large quantity of corn, a young mule and other farming contents were destroyed by a fire occuring about midnight. Winkle brought his action against the railway company, charging that the fire was occasioned by the railway company's failure to have proper screens, fenders or dampers, "spark arresters" as such contrivances are commonly known, upon its engines; and that the fire in question was occasioned by burning cinders thrown from such an improperly equipped engine. He obtained a verdict and judgment for $1,500, and the railway company appeals.

Appellant sets up three grounds for reversal which will be discussed in order. The first is that incompetent testimony was admitted for the appellee. The testimony objected to is testimony of a general nature admitted as to how high and how far engines of the railway company had been seen to throw cinders or sparks, the testimony not being limited to the particular engine which, according to the appellant's theory, was the only one which could have caused the fire in question. This testimony was unquestionably competent upon one issue. The railway company was taking the position that the barn was so far distant from the railroad track as that it would be impossilbe for sparks or cinders to be cast or carried so far from a locomotive. The testimony of witnesses generally upon their observation in this re-respect was certainly competent and admissible to throw light upon this issue. The same remarks apply to the size of the cinders and sparks. This precise question was before this court in Kentucky Central Railroad Co. v. Barrow, 89 Ky., 638, where it was held competent to show that the engines running past the location of the fire were so managed as to be likely to set on fire objects not more remote than the property burned. The same doctrine is announced in the case of L. & N. Railroad Co. v. Samuels' Exor., 22 Ky. L. R., 303, and in I. C. Railroad Co. v. Hicklin, 131 Ky., 624.

It was also urged that the trial court should have directed a verdict in favor of the railway company. The appellant contends that the engine known as the helper or hill engine which passed the point of the fire shortly before it broke out was the only one which could have done the damage. There was testimony in the record by the plaintiff that he found on the day after the fire coal cinders in a stalk pile lying against the end of the barn as it stood before the fire; that they were as large as the end of the witness' finger; that this particular engine within the witness' observation had thrown sparks; that within two weeks before the time of the accident fire had caught some five or six different places right below plaintiff's barn; that the day after the fire he saw this hill engine throwing sparks, some of which were as big as the end of a finger, as much as 80 feet above the smokestack; that he had seen the same engine within three or four days after the fire start a fire on the opposite side below where his barn stood. Another witness testified that he

had seen this particular engine throw sparks as big as his thumb, and that he had had to turn up his collar to keep them from going down his neck; and that on the 9th day of April, some three or four days before the fire, he had been on the barn roof, and that fire from the engine fell all around him on the roof. Another witness testified that before the fire occurred he had seen sparks that looked nearly as large as a hen-egg thrown from this hill engine, and that they had set fire to clover three or four hundred feet above High Bridge; that he had seen this particular engine about eight or nine o'clock on the night of the fire and it was then throwing sparks. Lewis Simpson, who was the brakeman on this helper engine on the night of the fire, testified that there was a sharp grade going south past this barn; that this engine started from High Bridge south at ten minutes to twelve o'clock on the night of the fire; that at that time the barn of Mr. Winkle had not burned; but that when this same engine returned past that point about 1:40 a. m., of the same night the barn had burned and the roof was about falling in; that when an engine starts to pull this southbound grade the steam is exhausted, the draft forced on the fire and sparks are caused to come out of the stack; that when the engine returned on that night the smoke went up a good distance and drifted from the railroad toward this barn. There was other similar testimony for the plaintiff. For the defendant, Horn, who was the locomotive engineer in charge of this engine on that night, testified that he had inspected the spark arrester on this engine on the day before the fire, and that it was in good condition; that the engine was not steaming right and that he thought the spark arrester might be disconnected and took it down to examine it; that if the spark arrester was in good order it would not allow a spark larger than a navy bean to pass through; and that if sparks as big as one's thumb were passing through it would indicate that the arrester was out of order and needed renewing.

G. L. Zerkle, a fireman on the helper engine, testified that he was on the engine on that night. He corroborated the testimony as to the examination of the spark arrester, and said as well that when sparks as large as a hen-egg passed through the screen there was something wrong with it. The proof for the defendant is clear that these engines and especially the helper engine were

equipped with spark arresters of approved pattern and as good as any in use. In the case of L. & N. Railroad Co. v. Taylor, 92 Ky., 55, it was held that notwithstanding an approved spark arrester was used the fact that sparks had been seen flying in large showers into a field and had as well been seen to have set fire to a fence alongside the railroad was sufficient to take the case to the jury and to authorize them to believe that these facts evidenced that the arrester was out of proper order or was improperly adjusted. The testimony in the case at bar went much further than that in the case just cited and the trial court would not have been warranted in taking the case from the jury. A full and satisfactory discussion of this principle is to be found in the recent case of L. & N. Railroad v. Guttman, 148 Ky., 235. That case collects and discusses the sundry authorities from this court upon this question. It quotes from the case of L. & N. Railroad Co. v. Samuels' Exor., 22 Ky. L. R., 303, as follows:

"But it is equally well settled that in an action against a railroad company to recover for loss by fire alleged to have resulted in negligence in operation, or for failure to have the spark arrester in proper condition, testimony showing that sparks and cinders escaped from the locomotive in unusual quantities was competent, and will, of itself, warrant the presumption that the arrester was out of order, or was improperly adjusted, and that the defendant was consequently guilty of negligence in this regard."

The Guttman case holds that evidence of this character is sufficient to take the case to the jury and that it was not of necessity overcome by evidence that the engines were fitted with approved spark arresters, because such testimony might not have been credited by the jury who were the arbiters of the facts. We, therefore, conclude that there was ample evidence to take the case at bar to the jury and, that there was no error in the refusal by the trial court to award the peremptory instruction asked for by the railway company.

It is also argued that the trial court erred in its instructions to the jury. Section 782 of the Kentucky Statutes, which was followed in the pleadings, provides as follows: "All companies shall place in or around the tops of the chimneys or engines a screen, fender, damper or other appliance that will prevent as far as possible sparks of fire from escaping from such chimneys." The

court told the jury in the first instruction that it was the duty of the railway company to equip its engines with "screens, fenders and dampers which constitute what is known as a spark arrester and which would prevent as far as possible sparks from escaping from its engine." It is argued that the use of the conjunctive had lead the jury to believe that an engine had to be equipped with all three of these articles. There might be force in the argument, had the court not followed it with the language pertinent to these appliances, that they were such as constituted "what is known as a spark arrester." When the jury understood that the appliance proven to have been on these engines was a spark arrester of the most approved type when installed, they could not have been mislead by the use of the conjunctive, plausibly argued by appellant as misleading. And further along in the instruction the court told the jury that if the defendant failed to provide its engine with "such screens, fender or dampers" it was liable. The disjunctive phraseology here used certainly made clear to the jury that the appliance alone necessary was the single appliance constituting a spark arrester.

Perceiving no error prejudicial to the substantial rights of the appellant we affirm the judgment of the trial court.