BUDD v. ANN ARBOR RAILROAD CO.

1. FIRES—RAILROADS—PLEADING—VARIANCE—EVIDENCE—SURPRISE.
   In an action against a railroad company for setting fire to plaintiff's premises by escaping sparks from a locomotive, where the declaration alleged that defendant's track ran so near plaintiff's property that it was possible for sparks to be carried from the engine, properly stating a cause of action, testimony tending to support the inference of improper equipment and operation, from the circumstance of the great distance it was assumed the spark was thrown, was not inadmissible on the ground of variance; the proof offered should have occasioned no surprise to defendant.

2. SAME—EVIDENCE—EXPERT WITNESSES—NEGLIGENCE.
   In such action, testimony of two witnesses, formerly loco-

motive engineers, although neither had operated an engine for many years, that a properly equipped engine could not throw sparks the distance traveled in the case at bar, was admissible, its weight being for the jury.

3. SAME—EVIDENCE—SPARKS—NEGLIGENCE.

Testimony of witnesses that, while working upon a barn, they had noticed live sparks fall upon the roof, carried a distance of from 150 to 200 feet farther from the track than the barn that was burned, was admissible for the purpose of showing that it was physically possible for sparks to be carried that distance through the air, but not for the purpose of showing that defendant's engines generally caused fires at other times and. places.

4. TRIAL—FIRES—EVIDENCE—DIRECTED VERDICT.

The court below was not in error in refusing to direct a verdict for defendant, where the evidence warranted the conclusion that defendant's engine caused the fire, although the evidence that the engine was out of order was based solely upon the testimony of experts that an engine properly equipped and managed would not emit a spark capable of setting fire at the distance in question.

Error to Washtenaw; Kinne, J. Submitted January 18, 1918. (Docket No. 149.) Decided March 27, 1918.

Case by Abraham D. Budd against the Ann Arbor Railroad Company for the negligent burning of plaintiff's buildings. Judgment for plaintiff. Defendant brings error. Affirmed.

*Alexander L. Smith, Gustavus Ohlinger* and *Cavanaugh & Burke,* for appellant.

*Arthur Brown* and *John P. Kirk* (*E. R. Sutherland,* of counsel), for appellee.

In this action plaintiff seeks to recover damages growing out of the loss of his farm buildings and contents by fire which he alleges was set by a passing locomotive belonging to defendant, equipped at the time with improper and defective appliances for

arresting sparks and improperly managed.   In the declaration it is alleged:

"That on said date the defendant was the owner of, and was engaged in operating, a railroad in this State by means of steam locomotives, which said railroad then and there ran so near to the said property so owned by the plaintiff that it was possible for sparks from said locomotives to be blown and carried over to and upon the said property."

In his opening statement counsel for plaintiff said that he would show that the straw stack which was ignited stood 453 feet from the railroad track.   At the close of said statement counsel for defendant objected to the introduction of any evidence under the declaration upon the ground that it did not state a cause of action.   Counsel said:

"Everything Mr. Brown in his statement says he was going to prove, he cannot prove under this pleading he had filed here.   In the second paragraph Mr. Brown says that this railroad 'then and there ran so near to the said property of the plaintiff that it was possible for sparks from said locomotives to be thrown over to and upon said property.'   In other words, that the track was so near that an engine, in proper order and properly operated, would throw sparks over onto that property, because it was so near, as he alleges in his declaration.   The proof he intends to make, according to his opening statement, cannot come under that pleading, because under his opening statement he says he proposes to show, not that the property was so near, but that it was so far away that it was impossible to throw sparks unless the engine was in bad condition, and that is exactly contrary to what he had pleaded; and he must amend his declaration before he can make his proofs conform to his opening statement; if he asks for that we shall ask for a continuance of this case."

The court reserved ruling, permitting the testimony to go in and afterwards in effect overruled the objection upon which defendant assigns error.   The circum-

stances under which the fire occurred are, briefly, as follows:

On September 23, 1916, at about 12 o'clock noon, plaintiff and the other members of his household had dinner. Immediately after dinner all the members of the household, including plaintiff, left the premises with the exception of Francis Jones, a boy between 11 and 12 years of age whose father and mother were plaintiff's tenants and lived in the house with him. No fire was used in or about the house except in an oil stove. Immediately after dinner, Mrs. Jones and her daughter went to town, leaving the little boy, Francis, with instructions to wash the dishes. This he did, consuming about 20 or 25 minutes in the labor, and, desiring a drink, he took a pail and went to the well located between the house and barn, and while in the act of pumping a pail of water he noticed a fire in the straw stack about 10 feet from the ground. He took the pail of water and endeavored to quench the fire, but was unable to do so. He then ran to the railroad track and called some section men who were likewise unable to extinguish the fire, but who did remove some of the contents of the barns. The plaintiff was working in a field nearby, and himself observed the fire in the stack before it was communicated to the barns. Both the plaintiff and the boy, Francis Jones, noticed a train going past the barn buildings a few minutes before the fire was discovered. The train was said to be heavily loaded with coal and working hard, with black smoke coming from the stack. There was a strong wind blowing from the west, plaintiff's barn buildings being located 453 feet east of the track. There had been a long spell of dry weather prior to the 23d day of September, though plaintiff testified that there had been a shower a day or two before. One witness testified to seeing this freight train pass heavily loaded and working hard; that with-

in 10 or 15 minutes afterwards he noticed a heavy smoke in the neighborhood of Pittsfield Junction and got a telephone message to the effect that plaintiff's barns were burning; that at about the same time he saw two other fires farther north along the east side of the track. Plaintiff offered as an expert, the witness, Spokes, who testified that he was then superintendent of the Ann Arbor waterworks, but that he had been a locomotive engineer working for the Ann Arbor railroad for a period of from 5 to 10 years, a good many years ago; that he understood the construction of locomotive engines and described the apparatus for the prevention of the throwing of sparks. He was asked the following question:

"Q. If a locomotive engine, drawing a heavily loaded freight train up that grade, laboring hard to make the grade, with a strong wind blowing from the west, if the spark arrester and appliances in the smokestack were in good order, whether or not it would be possible to throw out sparks having sufficient life to kindle a fire in a straw stack 453 feet east of the track, the wind being from the west?"

Counsel for defendant objected to the question for the following reasons:

"1. This witness has not run a train for 25 years, and at the time he was engaged in operating locomotives they used a different type of spark arrester from that used at the present time. There is no showing that he ever operated an engine such as it is claimed set this fire.

"2. There is no showing as to the distance of this stack from the track.

"3. Further, this is an attempt to introduce evidence directly at variance with their declaration; it is an attempt to show that this track was so far away that the fact of the communication of the fire there showed improper equipment of the locomotive or improper operation of it.

"4. Further, there has been no showing here yet that this locomotive set this fire."

The objection was overruled and the question was answered in the negative.

Another expert witness, one Loveland, was sworn for plaintiff, who testified that he was a locomotive engineer for 18 or 20 years, but had not run a locomotive since 1892. The following question and answer were permitted:

"*Q.* If an engine is properly equipped with a spark arrester in good order and under proper management, will it throw out a live spark which will carry vitality and life for a distance of 453 feet and set fire to a straw stack?

"*Mr. Ohlinger:* I object to his answering for the reason that he has not been shown competent to answer. His experience was with the type of arresters known as the cone, and he quit engineering about twenty years ago. The hypothetical question does not include anything in regard to the construction of the engine at the present time, nothing about the construction of the engine which it is claimed set this fire. Furthermore, we claim this question is not proper under the pleadings here, especially as made in the second paragraph of the declaration. Furthermore, there has been no proof of the distance.

"*The Court:* He may answer.

"*A.* No, sir."

Two witnesses, Elwood Rogers and Lance Rogers, were permitted to testify, over objection, that when they were building a new barn for plaintiff, located from 160 to 175 feet farther from the track than the old barn, they had observed cinders and live coals from passing engines fall upon the roof of said barn, and that such cinders had sufficient vitality to set fire to a straw stack.

At the close of the plaintiff's case a motion to direct a verdict in favor of the defendant was made, upon the ground that there was no evidence tending to show that the fire was set by the company and no evidence to show disrepair of the engine. This motion being denied, defendant introduced the evidence of the train

dispatcher of the defendant company. He was able from his sheets to identify the train which passed plaintiff's premises at the hour in question as train No. 71, engine No. 102. The evidence of one Edward Corcoran was then introduced who testified that he was inspector of the fronts of engines. On direct examination he testified that he inspected engine No. 102 on *Oct. 22, 1916,* and that he found the smoke stack, netting, ash-pan and grates in first-class condition. On cross-examination he fixed the date of this examination as *Sept. 22, 1916.* The date of this inspection given upon direct examination is probably erroneous. The motion for a directed verdict was again renewed and denied and the case was submitted to the jury who rendered a verdict in favor of the plaintiff for the sum of $1,000.

BROOKE, J. (*after stating the facts*). Counsel for defendant in this court assert that they rely upon errors as follows:

1. In the introduction of evidence.
2. In overruling defendant's motion for a directed verdict in its favor.
3. In refusing to give to the jury proper instructions requested by the defendant.

It is urged by counsel for defendant that inasmuch as plaintiff's declaration alleged that:

"Said railroad then and there *ran so near to the said property* so owned by the plaintiff that it was possible for sparks from said locomotive to be blown and carried over to and upon the said property,"

the plaintiff should not be permitted to offer any proof because:

"The proof he intends to make, according to his opening statement, cannot come under that pleading, because, under his opening statement, he says he proposes to show, not that the property was so near, but that it was so far away that it was impossible to

throw sparks unless the engine was in bad condition, and that is exactly contrary to what he had pleaded; and he must amend his declaration before he can make his proofs conform to his opening statement; if he asks for that we shall ask for a continuance of this case."

In this connection it is argued that testimony as to the distance from the track to the straw stack and all testimony tending to support the inference of improper equipment and operation from the circumstance of the great distance it was assumed the spark was thrown was inadmissible:

"On the ground that the declaration laid stress upon the *nearness* of the point of ignition, but made no claim as to *excessive distance.*"

We are unable to grasp the force of this argument. The declaration averred that the property destroyed was within the possible radius of flying sparks; that the fire was caused by sparks from defendant's engine and that said engine was improperly equipped and improperly managed. We think the declaration stated a cause of action and that the proof offered thereunder should have occasioned no surprise to defendant.

It is next argued that error was committed in permitting the witnesses, Spokes and Loveland, to testify that an engine properly equipped could not throw sparks capable of setting a fire a distance of 453 feet. The objection to the testimony of these witnesses is based upon the fact that neither had operated a locomotive engine for many years. The evidence of these witnesses was admissible under the authority of *Union Ice Co.* v. *Railway Co.*, 178 Mich. 346; its weight was for the jury.

Error is assigned upon the admission of the two witnesses, Rogers, to the effect that in November or December while building a new barn they had noticed live sparks fall upon the roof of said barn a distance

from 150 to 200 feet farther from the track than the location of the barn that was consumed. On this point defendant relies upon the case of *Ireland* v. *Railroad Co.,* 79 Mich. 163, where it is said:

"Where the particular engine is known and designated, it is not competent to show generally that the defendant's engines have caused fire at other times and places."

This testimony was not offered for the purpose of showing that defendant's engines generally caused fires at other times and places, but was offered for the purpose of showing that it was physically possible for sparks to be carried that distance through the air. For this purpose it would seem the testimony was admissible. *Hoskinson* v. *Railroad Co.,* 66 Vt. 618; *Matthews* v. *Railway Co.,* 142 Mo. 645; *Dunning* v. *Railroad Co.,* 91 Me. 87; *Grand Trunk Ry. Co.* v. *Richardson,* 91 U. S. 454; *Black* v. *Railroad Co.,* 122 Iowa, 32; *Cincinnati, etc., R. Co.* v. *Winkle,* 148 Ky. 726.

Error is assigned upon the action of the court in refusing to direct a verdict for the defendant upon the ground that the testimony showed without contradiction that engine No. 102 on the day of the fire was in proper condition and there was no evidence tending to show that it was improperly operated. In *Potter* v. *Railway Co.,* 157 Mich. 216, we held that where the defendant offered testimony tending to show that the engine was in good order and properly managed which was not directly controverted, where expert witnesses gave evidence tending to show that an engine in good order and properly managed would not throw live sparks across the distance claimed, a question of fact was raised for the determination of the jury.

The evidence contained in this record certainly warrants the conclusion that defendant's passing engine caused the conflagration. While the evidence that the

engine was out of order was based solely upon the fact that the fire was set at the distance named and the evidence of the experts that a properly equipped and properly managed engine would not emit sparks capable of setting fire at such a distance, we think such evidence sufficient to support the verdict of the jury.

The judgment is affirmed.

OSTRANDER, C. J., and BIRD, MOORE, STEERE, FELLOWS, STONE, and KUHN, JJ., concurred.