LULU J. WEBER, Appellant, v. JAMES C. DAVIS, Director General of Railroads, Appellee.

**RAILROADS:** Liability for Fire—Evidence—Insufficiency. **Evidence** reviewed, and held insufficient to. establish liability on the part of a railway company for damage from fire.

*Appeal from Wapello District Court.*—D. M. ANDERSON, Judge.

October 17, 1924.

Action to recover damages in the sum of $8,000, on the ground that plaintiff's house and the contents thereof were destroyed by fire negligently started by sparks from one of the engines of defendant. The case was tried to a jury, resulting in a verdict for plaintiff in the sum of $100. Plaintiff asked for a new trial, on the ground that the damages awarded were inadequate. The motion was overruled, and plaintiff appeals.— *Affirmed.*

*Lloyd L. Duke* and *Jones & White,* for appellant.

*McNett & McNett, J. G. Gamble,* and *A. B. Howland,* for appellee.

Preston, J.—Though the testimony of plaintiff's witnesses varies somewhat as to the value of the property and plaintiff's loss, the evidence fairly shows that her damages were approximately $7,000. The defendant introduced no evidence on the question as to the amount of damage. There is no basis whatever, under the evidence, for a verdict of $100. This is conceded by counsel for appellee; but they claim that, under the record, plaintiff was not entitled to recover at all, and that the verdict of the jury is equivalent to such a finding, and that the verdict for $100 was simply to carry the costs. The trial court, in overruling plaintiff's motion, held that plaintiff was not entitled to recover in any sum, and refused to grant a new trial on her application. In this we concur. Appellee was entitled to a directed verdict, or a new trial, on that ground. He has not asked a new trial. There could be no ground for claiming that the jury was prejudiced against the woman, or had any sympathy or bias in favor of the railroad. Appellant would be entitled to a reversal and a new trial if she has shown any negligence on the part of the appellee, and that she is entitled to recover in any sum. After a careful examination of the record, we reach the conclusion, as stated, that she did not so show.

A reference to the high points in the testimony will be

sufficient for the purposes of this opinion. There is a dispute at some points; but much of it is without conflict, although naturally there is some variance as to the time, and so on. For instance, some of plaintiff's witnesses state that the fire started about 9 o'clock in the forenoon; while others place it at about 11. So much of the evidence as is set out will be stated as favorably to the plaintiff as the record will bear.

Plaintiff's house, in the town of Eldon, was located on a bluff 20 feet high, and it is 18 feet from the foundation to the eaves—a two-story building. The railroad track is at the foot of the bluff. The railroad track was south and in the rear of the house. There were no buildings north of the house, except across the street, and no buildings west or south. There was a house on the east within about 30 feet of plaintiff's house, occupied by one Lyon. The south line of the house was about 118 feet from the center of the main track and about 60 to 70 feet from the switch track. The Keokuk division and the Kansas City line cross on the east side of the Des Moines River, adjacent to the passenger depot. There is a transfer track from the Missouri division main line to the Keokuk main line at the north side of the depot. The north switch of the transfer track is 1,785 feet from plaintiff's property. The switch track back of plaintiff's property is 5 or 6 feet north of the main-line track. The fire occurred some time between 9 and 11 o'clock in the forenoon of January 26, 1919. The house was burned to the ground. There was a slight breeze from the southwest that morning. The temperature was about 27 degrees above zero. There had been a large amount of snow for a period of about a month prior to the time of the fire, and the weather had been very cold during the larger portion of that time. The house was heated by a hot-air furnace, and was wired with electricity for lighting. The wires came into the house near the eaves on the east side. The chimney was located in the east central portion of the roof. According to plaintiff's testimony, there was a train on the railroad track in the rear of plaintiff's house on the morning of the fire, before it was discovered. As we understand it, this is denied by appellee. Plaintiff's evidence is to the effect that the engine was making a loud puffing and grinding noise. There is evi-

dence that the train, if there, was there not later than 7 o'clock, —at any rate, it was more than two hours from the time it is claimed the engine was there until the fire was discovered. The fire was first discovered on the roof near the eaves on the side towards the railroad. Plaintiff's evidence is that, when the fire was first discovered, it covered a space of only three or four feet in area. It burned rapidly. Disinterested witnesses for the defendant testify that the smoke was rolling up from the roof before any flames were visible, and that it broke out over the roof very suddenly, indicating that the fire originated in the attic of the house. Plaintiff's son was sleeping upstairs in the room under where the fire was discovered. Plaintiff went up to wake her son, as soon as she learned that the house was on fire. There was no smoke or fire in the room at that time. The boy was barely able to get his clothes out of the wardrobe before the ceiling fell in his room. Plaintiff and her relatives and neighbors were able to remove the household goods on the first floor of the building, but did not have time to move out the goods in the second story before the roof fell in. Plaintiff's husband testified that he fired the furnace the night before and banked the fire for the night; that he came home the night before about 12 o'clock; that he did not have a real hot fire; that he got up about 8 o'clock the next morning; that he did not fire the furnace that morning before the fire was discovered; that it was still banked from the night before. Plaintiff also so testified; but a witness for defendnat says that plaintiff stated that, when her husband got up, he made a fire, and had gone down town; and that, when she saw that he had not turned off the draft, she turned it off herself. On rebuttal, plaintiff testified that her husband might have built a fire that morning, and she could not say whether he did or did not. The Lyon house, 30 feet east of plaintiff's, had two stoves, a kitchen stove and heating stove. Lyon got up about 7 o'clock on the morning of the fire, and built a fire in each stove. The grass in the Weber yard was not set on fire on that morning. No other fires were set out in town that day or at any time near that date. There is no evidence that defendant's engine, or either of them, in Eldon, at that time and prior, emitted sparks.

Defendant's testimony showed that Engine 1680 was used in the Eldon yards as a switch engine from midnight until 8 o'clock on the morning of the 26th. The men operating the engine deny that they were in the vicinity of the Weber house on the Keokuk tracks at any time during their shift. Switch Engine 1676, with another crew, commenced work at 8 o'clock that morning. They say that this engine was not closer than a block and a half to the Weber house before the fire occurred. Defendant's evidence shows that the engines were properly equipped with standard spark arresters, which are described. There may be other minor details, but this is the substance of the testimony.

The origin of fires is frequently shrouded in mystery. It is possible, perhaps, that this fire was started by a spark from defendant's engine. The burden of proof was upon plaintiff to so show. Section 2056, Code, 1897; *Dingmon v. Chicago & N. W. R. Co.*, 194 Iowa 721, 724. We are of opinion that she did not so show. *Dingmon v. Chicago & N. W. R. Co.*, supra, at 723, 725. This being so, the refusal of the trial court to give requested instruction No. 4, as to the measure of damages, is not now material. Without discussing the matter, we think that the trial court, in instructions given, covered the point by saying that plaintiff was entitled to recover, if at all, the full amount of her damages.

The judgment is affirmed.—*Affirmed.*

Arthur, C. J., and Evans and Faville, JJ., concur.